In re MACKENZIE et al.

(District Court, D. Connecticut. July 12, 1904.)

No. 1,419.

1. BANKRUPTCY—DISCHARGE—FAILURE TO KEEP BOOKS OF ACCOUNT.

Proof that it was the custom of a manufacturing firm, prior to its bankruptcy, to pay employés on Saturdays intermediate the regular pay days, when requested, with money obtained by cashing customers' checks at some nearby place, and that such payments were not shown by the books, and also that the partners sometimes drew out for personal use equal sums without entering the same on the books, is not sufficient to sustain a specification of objection to the discharge of the partners on the ground that they failed to keep books from which their true condition might be ascertained, "with fraudulent intent to conceal their true financial condition and in contemplation of bankruptcy" (Bankr. Act July 1, 1898, c. 541, § 14b, 30 Stat. 550 [U. S. Comp. St. 1901, p. 3427]), where it is shown that such customs had prevailed for years before insolvency, and does not appear that the partners knew or believed themselves to be insolvent until immediately before their bankruptcy.

In Bankruptcy. On petitions for discharge.

The following is the report of John W. Banks, Referee in Bankruptcy:

1. Said Frank W. Mackenzie and Howard E. Mackenzie, both of Bethel, in Fairfield county, in said district, were duly adjudged bankrupts on the 21st day of November, 1898.

2. On the 10th day of June, 1899, each of said bankrupts filed with said referee his petition for discharge in accordance with the practice then prevailing in this district.

3. On the 21st day of June, 1899, I mailed to each known creditor of each of said bankrupts a notice containing the substance of said petitions, and that a hearing upon the same would be held before the undersigned referee on the 24th day of June, 1899, at 2 p. m., and I caused said notice to be published once in the Bridgeport Standard on the 21st day of June, 1899, a copy of which publication is annexed to each of said petitions.

4. At said hearing Berry Bros., Ltd., and Schorestine Freres, creditors, by W. H. Taylor, their attorney, appeared in opposition to the discharge of each of said bankrupts, and filed specifications of objection to such discharge on July 3, 1899, and additional specifications on November 17, 1899.

5. Testimony upon said specifications was taken before me on September 8, 1899, and on numerous other occasions thereafter, and oral arguments heard on December 21, 1903. A transcript of the testimony taken, amounting to 858 folios, is returned herewith. It was stipulated and agreed by counsel that the objections to the discharge of both bankrupts should be heard together, and that the evidence received should be received as evidence upon each petition.

6. The facts relevant to the objections filed in opposition to the discharge in each case are as follows:

The bankrupts were partners in the business of hat manufacturers in Danbury, Connecticut, under the firm name of Mackenzie & Co., and the specifications of objection filed relate solely to the conduct of the partnership business. The original specifications in substance allege that from September 7, 1898, to September 30, 1898, the bankrupts credited certain debtors upon their books with various sums, amounting in all to $4,119.34; that from September 15 to October 19, 1898, the bankrupts withdrew from the bank various sums, amounting in all to $5,583.68; that the bankrupts' books fail to show the disposition of the sums so credited on the books and so withdrawn from the bank, and that the bankrupts concealed and secreted said moneys, and failed to keep books of account which showed the disposition of said sums. The original specifications also allege that during the summer of 1898 the bankrupts concealed or destroyed their books of account. The additional specifications filed Novem-

ber 17, 1898, allege that between July 1, 1898, and November 12, 1899, the bankrupts received from all sources $49,397.32, and paid out $40,405.02 and that the difference between these two sums to wit, $8,992.30, was concealed by the bankrupts from their trustee, and that they failed to keep books of account showing the disposition of said sum. They further allege that between July 1, 1898, and October 29, 1898, the bankrupts did a business of $69,000, and that in contemplation of bankruptcy they sold goods at less than the prevailing market prices, and converted the proceeds to their own use, and concealed the same from their trustee in bankruptcy; and that the bankrupts failed to keep books of account showing the disposition of a portion of said goods, to wit, goods to the value of about $20,000.

Upon these specifications a mass of testimony was taken, the greater portion of which, though perhaps relevant to the issue, which was a broad one, was very remote, and of little value in assisting the court in determining the issues. The time which has elapsed since most of this testimony was taken has largely effaced the facts from the memory of the referee. The record in this case, indeed, covering as it does a period of 4½ years, is an excellent example of how a proceeding of this character should not be conducted. It will serve as a warning to the referee in other cases. I understand that the original specifications have been practically abandoned, and upon the argument counsel for the objecting creditors made no claims under them. Whether this be so or not, an examination of the record, which I have read with considerable care, makes it clear that the creditors have failed to prove any of the facts alleged in the original specifications. The withdrawal of the moneys from the bank alleged in paragraph 4 of the specifications, was fully explained by the testimony of Frank W. Mackenzie, and in the case of every item but one of $92.54 it was shown to have been withdrawn for the purpose of paying notes of the firm due the bank and others, memoranda of which appeared upon the firm checkbook. The disposition of most of the credit items recited in paragraph 2 of the specifications was satisfactorily explained by testimony of Frank W. Mackenzie, and appeared upon the firm's books. The books did not, however, show the disposition of all of the moneys so credited. Two classes of transactions did not appear upon the books: First. The two partners drew from time to time money from the firm for their personal requirements, and when they drew equal amounts no entry of such withdrawal was made upon the books of the firm. The exact amount of such withdrawal during the period covered by the specifications was not shown by the evidence, but I find that it was a considerable sum. Second. One Morgan, who was formerly bookkeeper of the firm, was employed by the trustee to assist him in settling the estate. After the claims due to the workmen had been paid by the trustee, Morgan destroyed the pay roll book, considering that it was of no further value. Neither of the bankrupts knew of or authorized the destruction of the book. The regular pay days of the firm were on alternate Saturdays. It was the custom of the firm to pay off on intermediate Saturdays such of their employés as chose to present vouchers for the work they had done. These payments were usually made, not by drawing a check for pay roll, but by getting customer's checks cashed at nearby places. The stubs of the checkbooks therefore did not show the sums used in making such payments. These "intermediate pays," so called, amounted to from $1,200 to $1,400 each month. The firm had always paid their employés in this manner, and it was the general custom among other hat factories. In addition to the pay roll book referred to, it appeared that the bookkeeper of the firm some time prior to the bankruptcy proceedings burned a number of old books and papers which were of no further value, and for which there was not room in the safe. Neither of the bankrupts instructed him to burn these books. It did not appear that the contents of the books would have thrown any light upon the financial condition of the firm at the time of the bankruptcy proceedings, or that they were of any value whatever.

The greater portion of the evidence taken in support of the additional specifications tended only in a very remote way to establish any of the allegations of the specifications. The only evidence taken under these specifications which requires consideration at this time is that of Mr. Peck, who testified in June, 1900, and February, 1902. Peck qualified as an expert bookkeeper, and testified that he had made an examination of the firm books in

November, 1899, and at that time made up a statement showing the results of his examination. He testified that according to this statement the firm's books showed that from July 1, 1898, to November 12, 1898, the bankrupts had received from $8,000 to $9,000 more than they had paid out. He testified that this statement included not only disbursements appearing upon the books, but some disbursements which did not appear upon the books, but the amount of which he did not state. This statement was not offered in evidence, and has never been seen by the referee. Mr. Peck testified that in ascertaining the amount disbursed for pay roll he took the amounts which the checkbook stubs showed had been drawn for pay roll purposes. As appears from what has been said above, the payments on pay roll account made between the regular pay days and which did not appear upon the checkbook stubs amounted to between $6,000 and $7,000 during the period from July 1 to November 12, 1898. Mr. Peck also testified that the statement did not include the amounts withdrawn by the bankrupts for their personal expenses which did not appear upon the books. These specifications allege, first, the concealment of a certain amount of money belonging to the bankrupts' estate; and, second, the failure to keep books of account, which would show the disposition of the money alleged to have been concealed. The concealment by the bankrupts from their trustee of property belonging to the estate is a criminal offense. The burden is upon the objecting creditors to establish its commission by clear and satisfactory evidence. The proof in this case falls far short of this requirement. It shows at most a mere bookkeeping discrepancy according to a statement not before the court, but which admittedly did not include items which, if included, would probably make good the discrepancy.

The failure of the bankrupts to keep books from which their true financial condition could be ascertained is the second ground of objection in this case. As the law stood prior to the amendment of February 5, 1903 (and that is the law applicable to this case), such failure must have been with fraudulent intent on the part of the bankrupts to conceal their true financial condition, and in contemplation of bankruptcy. It is true that the bankrupts in this case failed to keep complete and accurate books of account. There is nothing in the evidence, however, which even tends to show that their method of bookkeeping was accompanied by fraudulent intent to conceal their financial condition, or was adopted in contemplation of bankruptcy. Proof of such fraudulent intent should be clear. The evidence here strongly rebuts any such fraudulent intent on the part of either of these bankrupts. There was no substantial evidence in support of the last allegation of the additional specifications that the bankrupts sold goods at less than the prevailing market prices, concealed the proceeds from their trustee, and failed to keep books showing the disposition of a portion of said goods.

I find that the specifications have not been sustained either in the case of Frank W. Mackenzie or Howard E. Mackenzie, and in my opinion each of said bankrupts is entitled to a discharge.

Howard W. Taylor, for creditors.
Granville Whittlesey, for bankrupts.

PLATT, District Judge. The report of the referee, to whose ability and fairness it gives me pleasure to attest, and the voluminous insistence of counsel for the creditors, have induced a very careful examination of the record. Having done so, I am ready to state briefly how the matter strikes me. It ought, in my opinion, to be counted against me for blame if I should disregard his advice. His conclusions of fact, of course, I must accept. As to errors of law, I can find no evidence wrongfully admitted which can have injured the creditors, and no evidence wrongfully rejected which could have helped them if it had been admitted. The case really turns on the question of when the bankrupts found out that they were insolvent. It is clear that their financial condition as shown by the

April, 1888, inventory, was in evidence, at the solicitation of counsel for the creditors. That statement showed that the alleged bankrupts were then $16,000 or $17,000 to the good. They filed their petition in the fall. The referee finds that they did not know of their insolvency until shortly before the filing. The trouble in this case is the one which frequently appears. A going business has a certain value, but as soon as the business dies the depreciation in the value of assets is enormous. It is unreasonable to expect in any case that the parties will appreciate their situation until the certainty of stoppage stares them in the face. Courage and hope are very important factors in a business career, but they frequently lead their possessor beyond the danger line.

The report of the referee is accepted, and the bankrupts are discharged.